IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| Michael Robert Barker,[1] | ) | |
| | ) | Case No. 2:04-CV-518 DAK |
| Plaintiff, | ) | **REPORT & RECOMMENDATION** |
| | ) | **AND ORDER DENYING MOTIONS** |
| v. | ) | |
| | ) | |
| UTAH STATE OFFICE OF EDUCATION, | ) | District Judge Dale A. Kimball |
| et al., | ) | Magistrate Judge David Nuffer |
| | ) | |
| Defendants. | ) | |

Plaintiff filed suit against the Utah State Office of Education, the Washington County

School District, and numerous officers and board members of the two entities.  The case was

referred to the magistrate judge under 28 U.S.C. § 636 (b)(1)(B).  The court granted Plaintiff's

application to proceed without prepayment of fees.  (Dkt. no. 2.)  Plaintiff subsequently served

the Washington County School District; board members, Teresa L. Theuer,[2] Francis Christensen,

Wes Christiansen, Wendell Guebler, Carole Morris, and Craig Seegmiller; Superintendent Max

H. Rose; and Business Administrator Brent Bills (Washington County defendants).  The

---

[1]Although the court generally prints the parties' names in all capital letters in the captions of court documents, the court does not capitalize all the letters in Plaintiff's name as a courtesy to Plaintiff.  (See Order, Dkt. no. 26.)

[2]In the caption of the complaint, Teresa L. Theuer is described as a board member of the Utah State Office of Education, but apparently she is a board member of the Washington County School District.  (See Mot. Dismiss, footnote 1, Dkt. no. 18.)

Washington County defendants have filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (Dkt. no. 18.) [3]

## I.  BACKGROUND

Plaintiff's complaint consists of seventy-four pages and numerous attached exhibits.  It contains fifty-seven counts alleging violations of Plaintiff's rights under the United States Constitution and various federal statutes.  Despite its length, it fails to provide a concise statement of the facts underlying Plaintiff's claims.  The court gleaned the following facts from the complaint and the attached exhibits.[4]

Plaintiff and his school-aged children live in a remote part of Washington County about twenty-one miles from the nearest paved road.  (Ex. C, ¶ 15.)[5]  Since the 2000-01 school year, Plaintiff has driven his children to and from the nearest school bus stop.  (Compl. at 36, 69.) Under Utah administrative rules, a school district may pay a student an allowance for

---

[3]Plaintiff filed a document entitled Motion to Strike Washington District's Motion to Dismiss and Motion for Leave to Amend Civil Rights Complaint Including Points and Authorities.  (Dkt. no. 22.)  Although Plaintiff does ask to amend his complaint and to strike the motion to dismiss, this document is essentially a memorandum in opposition to the Washington County defendants' motion to dismiss.  At appropriate times, the court refers to the document as Plaintiff's opposition memorandum (Pl.'s Opp'n.).

[4]"[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint."  Oxendine v. Kaplan, 241 F.3d 1272, 1275 (10th Cir. 2001); Hall v. Bellmon, 935 F.2d 1106, 1112 (10th Cir. 1991)("A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal.").  See Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

[5]All exhibits are attached to the complaint, docket no. 3.

transportation if he is not served by a regular bus route.  The Washington County School District

has reimbursed Plaintiff for his mileage at the rate of thirty-two cents a mile in lieu of providing

door-to-door bus service.[6]

After reviewing various administrative rules and guidelines, Plaintiff came to the

conclusion that he was entitled to a higher rate of reimbursement for his mileage, as well as

reimbursement for his trips to buy fuel for his vehicle, for the wear and tear on his automobiles,

and compensation for his own time in driving the children to and from the bus stop.  (See Exhibit

C.)  Plaintiff notified the school district of his determination and requested additional

compensation.  However, the school district refused his request, explaining that under the

guidelines, the reimbursement rate should be no less than the standard mileage rate deduction

allowed by the IRS for charitable donations (fourteen cents), and no greater than the

reimbursement allowance permitted by the Utah Department of Administrative Services for the

use of privately owned vehicles set forth in the Utah Travel Regulations (currently thirty-six

cents).  The school district stated that the rate at which Plaintiff was being reimbursed was the

---

[6]The pertinent portion of the rule provides:
A student is reimbursed for the mileage to the bus stop or school, whichever is closer, nearest the student's home and for reasonable and necessary out-of-pocket costs associated with student transportation.  The allowance shall not be less than the standard mileage rate deduction permitted by the United States Internal Revenue Service for charitable contributions, nor greater than the reimbursement allowance permitted by the Utah Department of Administrative Services for use of privately owned vehicles set forth in the Utah Travel Regulations.

Utah Admin. R. R277-600-8(B)(1) (2005).

maximum allowable amount under Utah Administrative Service Guidelines.  (Compl. at 9; Ex. D, E, & J.)

Plaintiff disagreed with the districts's decision and sought reconsideration by the Washington County School District, as well as relief from the Utah State Office of Education, and the Utah Attorney General.  (See generally, Ex. A-K.)  Unsatisfied with the response he received, Plaintiff filed the instant lawsuit in which he seeks damages totaling more than $3,000,000 and declarations that certain provisions of Utah law are unconstitutional.

## II.  STANDARD OF REVIEW UNDER RULE 12(b)(6)

It is well settled that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957),  Peterson v. Jensen, 371 F.3d 1199, 1201 (10th Cir. 2004); Gonzales v. City of Castle Rock, 366 F.3d 1093, 1096 (10th Cir. 2004), rev'd on other grounds, 125 S. Ct. 2796 (2005).  In reviewing the complaint, the court accepts all well-pleaded facts as true, construes the complaint liberally, and draws all reasonable inferences in favor of the plaintiff.  Gonzales, 366 F.3d at 1096; Ruiz v. McDonnell, 299 F.3d 1173, 1181 (10th Cir. 2002).[7]

---

[7]In his opposition memorandum, Plaintiff appears to argue that dismissal is inappropriate because a genuine issue of material fact exists.  Plaintiff has confused the standard for dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6) with the standard for summary judgment under Rule 56.

### III.  PLAINTIFF'S STATUTORY CLAIMS

**A.  Counts 1 and 2.[8]  42 U.S.C. § 1986**

In Counts 1 and 2 of the complaint, Plaintiff attempts to state a claim under Section 1986 for failure to prevent a "conspiratorial wrong."  However, as Defendants point out, a claim under Section 1986 must be predicated upon a valid claim under Section 1985.  Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir. 1990); Santistevan v. Loveridge, 732 F.2d 116, 118 (10th Cir. 1984).  As discussed below, Plaintiff has not stated a valid Section 1985 claim.  Therefore, he has no claim under Section 1986.

**B.  Counts 3 through 6.  42 U.S.C. § 1985(2), (3)**

Counts 3 and 4 of the complaint arise under Section 1985(2) which "contains four clauses that create four distinct causes of action."  Wright v. No Skiter Inc., 774 F.2d 422, 425 (10th Cir. 1985); accord Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1126 (10th Cir. 1994).  Plaintiff apparently relies on the third clause of Section 1985(2) which creates a cause of action against persons who conspire to obstruct the "due course of justice."  In counts 5 and 6, Plaintiff attempts to state a claim under Section 1985(3) for conspiracy to violate his civil rights. However, Plaintiff has alleged no race or class-based animus.  This precludes a claim under section 1985(3) and under the third clause of Section 1985(2).  See Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 834-35

---

[8]In Counts 1-22, the odd-numbered counts apply to the individual defendants, and the even numbered counts apply to the entity defendants.

(1983).  Silkwood v. Kerr-McGee Corp., 637 F.2d 743, 748 (10th Cir. 1980); Smith v. Yellow

Freight Sys., Inc., 536 F.2d 1320 (10th Cir. 1976).

Moreover, Plaintiff's allegations are insufficient to establish the existence of a

conspiracy.  The complaint fails to allege agreement or concerted action among the defendants, a

requirement of a conspiracy claim.  See  Brever, 40 F.3d at 1126;  Langley v. Adams County,

Colo., 987 F.2d 1473, 1482 (10th Cir. 1993); Crabtree ex rel. Crabtree v. Muchmore, 904 F.2d

1475, 1481 (10th Cir. 1990)(appendix)("[A]llegations of conspiracy must provide some factual

basis to support the existence of the elements of a conspiracy:  agreement and concerted

action.").  Thus, Plaintiff has failed to state a claim under Section 1985.

## C.  Counts 7 and 8.  42 U.S.C. § 1994

Section 1994 abolished peonage.  Although Plaintiff's section 1994 claim is not

altogether clear, it seems to be based on the idea that his labor in driving his children to school

constitutes peonage.  Plaintiff alleges that because school attendance is compulsory, he believed

he had "no reasonable means of escape and no choice" but "to remain in the service of the

Washington County School District and the Utah Office of Education."  (Compl. at 18.)

The Supreme Court has defined "peonage' as "a status or condition of compulsory

service, based upon the indebtedness of the peon to the master.  The basal fact is indebtedness."

Clyatt v. United States, 197 U.S. 207, 215 (1905); accord Bailey v. Alabama, 219 U.S. 219, 242

(1911); United States v. Reynolds, 235 U.S. 133, 144 (1914).  See also Adams v. New Mexico,

Nos. 90-2158, 90-2190, 1991 WL 35222, at *2 (10th Cir. Feb. 22, 1991)(unpublished)("The

essence of [peonage] is compulsory service in payment of debt.  A peon is one who is compelled to work for his creditor until his debt is paid.")(quoting <u>Bailey</u> 219 U.S. at 242); <u>Jenkins v. Trustees of Sandhills Cmty. Coll.</u>, 259 F. Supp. 2d 432, 445 (M.D.N.C. 2003)(dismissing Section 1994 claim where the plaintiff offered "neither allegation nor evidence that she owed any of the defendants a debt or that she was held to compulsory labor."), <u>aff'd</u>, No. 03-1633 (4th Cir. Nov. 10, 2003); <u>Del Elmer; Zachay v. Metzger</u>, 967 F. Supp. 398, 402 (S.D. Cal. 1997)(dismissing Section 1994 claim where plaintiff "failed to allege that defendants have held him against his will or have forced him to perform labor to satisfy a debt.").

Here, Plaintiff has not, and cannot, state a claim for peonage.  First, he has not alleged that he owes a debt to any of the defendants.  Further, the act of driving his children to school does not constitute compulsory service.

### D.  Counts 9 through 12.  18 U.S.C. §§ 241 and 242

Sections 241 and 242 are criminal statutes prohibiting the deprivation of civil rights. They do not give rise to a private cause of action.  <u>Newcombe v. Ingle</u>, 827 F.2d 675, 676 n.1 (10th Cir. 1987); <u>Larsen v. Larsen</u>, 671 F. Supp. 718, 719 (D. Utah 1987), <u>aff'd</u>, 871 F.2d 1095 (10th Cir. 1989); <u>Del Elmer; Zachay</u>, 967 F. Supp. at 403.

### E.  Counts 13 through 18.  18 U.S.C. §§ 1581, 1583, and 1584

Sections 1581, 1583, and 1584 are criminal statutes enacted to enforce the Thirteenth Amendment.  They do not provide a civil remedy.  <u>Buchanan v. City of Bolivar, Tenn.</u>, 99 F.3d

1352, 1357 (6th Cir. 1996); <u>Turner v. Unification Church</u>, 473 F. Supp. 367, 375-76 (D.R.I.

1978), <u>aff'd</u>, 602 F.2d 458 (1st Cir. 1979); <u>Risley v. Hawk</u>, 918 F. Supp. 18, 21 (D.D.C. 1996),

<u>aff'd</u>, 108 F.3d 1396 (D.C. Cir. 1997).

**F.  Counts 19 through 22.  18 U.S.C. §§ 1589 and 1590.**

Section 1589 and 1590 prohibit forced labor and trafficking with respect to peonage,

slavery, involuntary servitude, or forced labor.  Again, these are criminal statutes, and not a basis

for a private cause of action.[9]

**G.  Count 23.  18 U.S.C. § 1593.**

Section 1593 provides for restitution to victims of crimes under Chapter 77 of Title 18,

which deals with peonage, slavery, and trafficking in persons.  Plaintiff has not alleged that any

of the defendants have been convicted of an offense under this Chapter, and as with Plaintiff's

other claims, this section has no application.

## IV.  PLAINTIFF'S CONSTITUTIONAL CLAIMS

**A.  Counts 24 through 27.[10]  42 U.S.C. § 1994 and Fifth Amendment Takings Clause.**

As discussed in Counts 7 and 8, Plaintiff cannot state a peonage claim under section

1994.  Regarding the takings claim, Plaintiff alleges that the "withholding of a full mileage

---

[9]Section 1595 provides a civil remedy for victims of violations of sections 1589 and 1590.  However, there is no allegation that any of the defendants have been convicted of violations of those sections.

[10]In counts 24 through 53, the even-numbered counts apply to the individual defendants and the odd-numbered counts apply to the entity defendants.

allowance for Plaintiff's travel mileage" violates his Fifth Amendment right "to not have private property taken for public use without just compensation."  (Compl. at 38.)

The Supreme Court rejected a similar argument in Hurtado v. United States, 410 U.S. 578 (1973).  In Hurtado, the plaintiffs had been incarcerated as material witnesses and compensated pursuant to statute at only one dollar a day.  They argued that their incarceration constituted a "taking" and that a dollar a day was not "just compensation."  In rejecting this claim, the Supreme Court stated that "the Fifth Amendment does not require that the Government pay for the performance of a public duty it is already owed."  Id. at 588.  The Court explained that there is a public obligation to provide evidence and "this obligation persists no matter how financially burdensome it may be."  Id. at 589.  The financial losses suffered by the plaintiffs were an extension of the burden that is borne by every witness who testifies.  "The personal sacrifice involved is a part of the necessary contribution of the individual to the welfare of the public."  Id. (quoting Blair v. United States, 250 U.S. 273, 281 (1919)).  The Court concluded that the detention of a material witness is simply not a "taking" under the Fifth Amendment, and the level of compensation, therefore, did not present a constitutional question.  Hurtado, 410 U.S. at 589.

The argument presented by Plaintiff is analogous to the situation in Hurtado.  Plaintiff has a societal duty to educate his children.  The fact that their education may place burdens upon him, including financial burdens, does not constitute a "taking" within the meaning of the Fifth Amendment.

**B.  Counts 28 and 29.  Fourth Amendment**

Plaintiff alleges Defendants violated his Fourth Amendment rights by "in effect, seizing Plaintiff's vehicle, seizing Plaintiff's person and time, and by in effect seizing Plaintiff's money to provide transportation for Plaintiff's children to the nearest school bus stop, which action was unreasonable, without probable cause, affidavit, or warrant."  (Compl. at 41.)  A seizure of a person occurs for Fourth Amendment purposes "only when, by means of physical force or a show of authority, his freedom of movement is restrained."  United States v. Mendenhall, 446 U.S. 544, 553 (1980).  "Whenever an officer restrains the freedom of a person to walk away, he has seized that person."  Tennessee v. Garner, 471 U.S. 1, 7 (1985).  The facts alleged by Plaintiff do not support a claim that either Plaintiff's person or his property were seized.  There is no allegation that Plaintiff was ever detained or that his vehicle or any other property was impounded.  This is a patently frivolous claim.

**C.  Counts 30 and 31.  Fifth Amendment Due Process**

Plaintiff claims a violation of his Fifth Amendment right to due process.  However, the Fifth Amendment due process clause "applies only to the federal government, while the Fourteenth Amendment due process clause applies to states."  Estate of Conner by Conner v. Ambrose, 990 F. Supp. 606, 615 (N.D. Ind. 1997); Smith v. Kitchen, 156 F.3d 1025, 1028 (10th Cir. 1997)(Fifth Amendment due process clause only protects against actions by the federal government); Yanaki v. Iomed, Inc., ___ F.3d ___, No. 04-4061, 2005 WL 1745595, at *2 n.4 (10th Cir. July 26, 2005); Love v. Bolinger, 927 F. Supp. 1131, 1137 (S.D. Ind. 1996); Shoemaker

10

v. City of Lock Haven, 906 F. Supp. 230, 238 (M.D. Pa. 1995); Lyle v. Dodd, 857 F. Supp. 958,

966 (N.D. Ga. 1994).  See Bartkus v. Illinois, 359 U.S. 121, 124 (1959).  No federal defendants

are involved in this case.  Thus, Plaintiff has no Fifth Amendment due process claim.  To the

extent that he asserts a due process claim, it falls under the Fourteenth Amendment discussed

below.  See, Conner, 990 F. Supp. at 615; Shoemaker, 906 F. Supp. at 238.

**D.  Counts 32 and 33.  Ninth Amendment.**

The Ninth Amendment states:  "The enumeration in the Constitution, of certain rights,

shall not be construed to deny or disparage others retained by the people."  Plaintiff alleges that

Defendants violated his Ninth Amendment rights by causing him to pay out-of-pocket expenses

above the standard mileage rate, and by subjecting him to involuntary servitude in driving to the

bus stop.  However, Plaintiff cannot state a claim under the Ninth Amendment.

"The Ninth Amendment is a rule of interpretation rather than a source of rights."

Froehlich v. Wisconsin Dep't of Corrections, 196 F.3d 800, 801 (7th Cir. 1999); accord Vega-

Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 182 (1st Cir. 1997); San Diego County Gun

Rights Comm. v. Reno, 98 F.3d 1121, 1125 (9th Cir. 1996).  "Its purpose is to make clear that the

enumeration of specific rights in the Bill of Rights is not intended . . . to deny the existence of

unenumerated rights."  Froehlich, 196 F.3d at 801; Gibson v. Matthews, 926 F.2d 532, 537 (6th

Cir. 1991).  It does not create an independent cause of action.  Powell v. American Gen. Fin.,

Inc., 310 F. Supp. 2d 481, 486 (N.D.N.Y. 2004).  Accordingly, Plaintiff's Ninth Amendment

claim is without merit.

**E.  Counts 34 and 35.  Tenth Amendment**

The Tenth Amendment states:  "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  Although Plaintiff's complaint is far from clear, Plaintiff apparently alleges that Defendants unlawfully deprived him of rights by exercising "powers" that "were never delegated by law through the U.S. legislature or the Utah legislature," and because power was not delegated to the defendants, it was "reserved to the people."  (Compl. at 48.)

As Defendants point out, Plaintiff misinterprets the Tenth Amendment which concerns principles of federalism.  See, e.g., Powell, 310 F. Supp. 2d at 486 ("The Supreme Court has repeatedly interpreted the Tenth Amendment, the reserved powers amendment, to speak only to issues of federalism and state's rights.").  The Tenth Amendment constrains the power of the federal government, not the power of the states.  It is not a source of individual constitutional rights.  Stone v. City of Prescott, 173 F.3d 1172 (9th Cir. 1999); Dillard v. Baldwin County Comm'rs, 225 F.3d 1271, 1281 n.4 (11th Cir. 2000).  See also United States v. Parker, 362 F.3d 1279, 1284-85 (10th Cir. 2004)(holding that a private plaintiff does not have standing to bring suit under the Tenth Amendment when his interests are not aligned with those of the state), cert. denied, 125 S. Ct. 88 (2004).  Thus, Plaintiff cannot state a claim under the Tenth Amendment.

**F.  Counts 36 and 37.  Thirteenth Amendment**

The Thirteenth Amendment prohibits slavery or involuntary servitude.  In Counts 36 and 37, Plaintiff apparently alleges that his labor in transporting his children to school, as well as his

payment of expenses associated with such transportation, constitutes involuntary servitude in violation of the Thirteenth Amendment.

Several courts have held that a plaintiff may not maintain a cause of action directly under the Thirteenth Amendment.  Rather, he must base such claims on one of the statutes implementing the Amendment, such as section 1994.  See, e.g., Del Elmer; Zachay, 967 F. Supp. at 402; Sanders v. A.J. Canfield Co., 635 F. Supp. 85, 87 (N.D. Ill. 1986); Baker v. McDonald's Corp., 686 F. Supp. 1474, 1480 n.12 (S.D. Fla. 1987).  Thus, any claim Plaintiff is attempting to assert directly under the Thirteenth Amendment should be dismissed.

Further, even if such a cause of action existed, Plaintiff has failed to allege facts that would support a claim of involuntary servitude.  The Supreme Court has defined "involuntary servitude," as a "condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process."  United States v. Kozminski, 487 U.S. 931, 952 (1988).

Plaintiff has not alleged that he was forced to work by the use or threat of physical restraint or injury.  Instead, he bases his claim on legal coercion, stating that he was forced to provide transportation by compulsory school attendance laws and that he had no reasonable means of escape or choice.  Plaintiff's involuntary servitude claim fails for several reasons.

The Supreme Court has observed that "not all situations in which labor is compelled by physical coercion or force of law violate the Thirteenth Amendment."  Id.  Thus, "the prohibition against involuntary servitude does not prevent the State or Federal Governments from compelling

13

their citizens, by threat of criminal sanction, to perform certain civic duties." Id. at 943-44.  The

Kozminski Court gave the following examples of such duties:  Hurtado v. United States, 410

U.S. 478, 589 n.11 (1973)(material witness); Selective Draft Law Cases, 245 U.S. 366, 390

(1918)(military service); Butler v. Perry, 240 U.S. 328, 332-33 (1916)(roadwork).  See also

Brogan v. San Mateo Co., 901 F.2d 762, 764 (9th Cir. 1990)(stating that state workfare programs

"do not constitute involuntary servitude or peonage in violation of the thirteenth amendment").

As one court has observed, "a long series of cases have held that creating the ordinary legal

motives for right conduct . . . does not involve 'involuntary servitude' as those words are used in

[the Thirteenth] Amendment."  Quaker City Motor Parts Co. v. Inter-State Motor Freight Sys.,

148 F. Supp. 226, 233 (E.D. Penn. 1957).  In the instant case, the requirement that Plaintiff enroll

and send his children to school falls within the Thirteenth Amendment's "civic duty" exception.

See Channer v. Hall, 112 F.3d 214, 218-19 (5th Cir. 1997).

Further, the Supreme Court has stated that to be in a condition of involuntary servitude,

the victim must have "no available choice but to work or be subject to legal sanction."

Kozminski, 487 U.S. at 943 (emphasis added).  Courts have consistently held that "[n]o

involuntary servitude exists where the claimant has an option not to serve."  Verner v. Colorado,

533 F. Supp. 1109, 1118 (D. Colo. 1982), aff'd, 716 F.2d 1352 (10th Cir. 1983).  "When the

employee has a choice, even though it is a painful one, there is no involuntary servitude. . . . A

showing of compulsion is thus a prerequisite to proof of involuntary servitude."  Brooks v.

George County, Miss., 84 F.3d 157, 162 (5th Cir. 1996)(quoting Watson v. Graves, 909 F.2d

1549, 1552 (5th Cir.1990).  For example, in <u>Brooks</u>, the Fifth Circuit held that where an inmate

had a choice between staying in jail or working, even though the charges against him had been

dropped, he was not subjected to involuntary servitude.  <u>Brooks</u>, 84 F.3d at 162-63 ("Admittedly,

the choice described might have been a painful one, but it was nonetheless a choice.").  <u>See also</u>

<u>Mack v. United States</u>, 66 F.3d 1025, 1034 (9th Cir. 1995)(federal law requiring local law

enforcement officers to conduct background checks of handgun purchasers did not subject

officers to involuntary servitude because they could quit work at any time), <u>rev'd on other</u>

<u>grounds</u> <u>sub nom.</u> <u>Printz v. United States</u>, 521 U.S. 898 (1997); <u>Flood v. Kuhn</u>, 443 F.2d 264,

268 (2d Cir. 1971)(rejecting a Thirteenth Amendment challenge to baseball's reserve system

because players have the right to choose not to play at all), <u>aff'd</u>, 407 U.S. 258 (1972); <u>Verner</u>,

533 F. Supp. at 1118-19 (rejecting claim that rule requiring attorneys to attend CLE classes

violated the Thirteenth Amendment, because lawyers have the right not to attend classes and not

practice law).

   In the instant case, Plaintiff is not faced with a situation where he has "no available

choice but to work or be subject to legal sanction."  <u>Kozminski</u>, 487 U.S. at 943.  He is not

compelled to drive his children to the bus stop.  Rather, he has other alternatives such as hiring

someone else to drive them to the bus stop, letting them walk, sending them to private school, or

teaching them at home.  For the foregoing reasons, the facts alleged by Plaintiff do not state a

claim for involuntary servitude and this claim should be dismissed.

**G.  Counts 38 and 39.  Fourteenth Amendment (Procedural Due Process)**

Plaintiff contends his due process rights were violated because there was no formal administrative procedure to address his claims, and he did not receive a formal hearing on his mileage reimbursement complaint.  To state a claim for a violation of procedural due process, a plaintiff must allege that (1) he has a liberty or property interest that has been interfered with by the state; and (2) and that the procedures attendant upon the deprivation were constitutionally insufficient.  Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Copelin-Brown v. New Mexico State Personnel Office, 399 F.3d 1248, 1254 (10th Cir. 2005).  However, "[t]he procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit.'"  Town of Castle Rock, Colo. v. Gonzales, 125 S. Ct. 2796, 2803 (2005).  "'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.'"  Id. (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)).  Such entitlements are "not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  Town of Castle Rock, Colo., 125 S. Ct. at 2803 (quoting Paul v. Davis, 424 U.S. 693, 709 (1976)); Roth, 408 U.S. at 577.

As Defendants point out, Plaintiff has failed to identify any liberty or property interest that would give rise to a due process claim.  The administrative rule upon which Plaintiff relies does not bestow upon Plaintiff a property interest in receiving a mileage reimbursement because

16

the express language of the rule provides that the allowance "is made to the student and <u>not to the</u> <u>parent</u> for transporting one's own child or other students." Utah Admin. R. R277-600-8(B)(2)(emphasis added). Accordingly, since Plaintiff has identified no protected liberty or property interest that has been interfered with by the state, no procedural protections were due.

Moreover, even if Plaintiff had such an interest, the court concludes that he received adequate procedural protection. Due process is a flexible concept which does not require a formal hearing under all circumstances. <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972)(stating that "due process is flexible and calls for such procedural protections as the particular situation demands."). <u>See Mathews v. Eldridge</u>, 424 U.S. 319 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" <u>Mathews</u>, 424 U.S. at 333 (quoting <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552 (1965)).

In addition to numerous written communications and telephone conversations, Plaintiff had a meeting on September 5, 2000, with the Washington County Board of Education at which Brent Huffman, People Transportation Specialist at the Utah State Office of Education, participated by telephone. (Pl.'s Aff., Ex. C, ¶ 1; Letter, dated 11/1/00, from John J. Walton to Plaintiff, Ex. D.) Following the meeting, the Washington County School District agreed to forward Plaintiff's request to the Utah State Office of Education. That office, through Steven O. Laing, State Superintendent of Public Instruction, denied Plaintiff's request, stating that Plaintiff was receiving the maximum reimbursement allowable under the Utah Administrative Service Guidelines. Plaintiff was notified that if he wished to appeal the decision, his request should be

directed to the State Office of Education.  (Letter, dated 11/1/00, from John J. Walton to

Plaintiff, Ex. D; Letter, dated 10-17-00, from Kolene F. Granger, Superintendent of the

Washington County School District,  to Plaintiff, Ex. E; Letter, dated 10-04-00, from State

Superintendent Steven O. Laing to Superintendent Granger, Ex. E.)  Plaintiff apparently filed an

appeal with the Utah State Office of Education which in turn forwarded the appeal to the Utah

Attorney General's Office for review.  After a thorough review, the Attorney General upheld the

administrative decision.  (Letter, dated 12-7-00, from John S. McAllister, Assistant Attorney

General, to Plaintiff, Ex. F.)  Plaintiff then filed a petition for reconsideration.  Although there

was no established procedure to deal with such a petition, a conference was held between Brent

Huffman, Transportation Specialist at the State Office of Education; Carol Lear, Attorney at the

Utah State Office of Education, and John S. McAllister, Assistant Attorney General, Education

Division.  After reconsideration, the officials again concluded that Plaintiff was receiving the

maximum reimbursement available.  They informed Plaintiff that he should consider their

decision final.  (Letter dated 2-14-01, from McAllister to Plaintiff, Ex. G.)  Plaintiff nevertheless

persisted with his claim for greater reimbursement.  (See Ex. A, B, H, J, K-1.)

    As Plaintiff's complaint and exhibits make clear, he received multiple levels of review

involving local officials, the Utah State Board of Education, and the Utah Attorney General in

which he was able to present his side of the dispute, and receive an explanation of the decision.

Under the circumstances of this case, due process does not require more.  See, e.g., Memphis

Light, Gas & Water Div. v. Craft, 436 U.S. 1, 16 n.17 (1977)(stating that in appropriate

circumstances, due process is satisfied by opportunity for informal consultation with an employee

who has authority to correct a mistaken determination).  Accordingly, Plaintiff's procedural due

process claim is without merit.

## H.  Counts 40 and 41.  Fourteenth Amendment (Equal Protection)

Plaintiff alleges he was denied his right to equal protection because other citizens get free

school transportation for their children.  (Compl. at 53.)  It is well-settled that "[t]he Equal

Protection Clause prohibits state and local governments from treating similarly situated persons

differently."[11]  Rector v. City & County of Denver, 348 F.3d 935, 949 (10th Cir. 2003); see City

of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439-41 (1985).  However, because no

suspect class or fundamental right is implicated in this case, the "government's classification

need only be rationally related to a legitimate government interest."  Rector, 348 F.3d at 949;

Copelin-Brown, 399 F.3d at 1255.  Here, the decision not to provide bus service to students in

the position of Plaintiff's children is rationally related to the legitimate government interest in

economy and cost-efficiency.  In fact, the Tenth Circuit recently rejected a similar claim in which

the plaintiff contended that a school district's failure to provide bus service constituted an equal

protection violation.  Labrum v. Wayne County Sch. Bd., No. 03-4106, 2004 WL 1110525 (10th

---

[11]It should be noted that Plaintiff is not being treated differently from other similarly situated parents who live in remote areas.  Dr. Kolene Granger, the Superintendent of the Washington County School District, told Plaintiff in a letter that his children "are treated the same as other similarly situated students."  (Letter from Dr. Granger to Plaintiff, dated 10/17/00, Ex. E.)

19

Cir. May 19, 2004)(unpublished opinion).  Accordingly, Plaintiff's equal protection claim fails as a matter of law.

**I.  Counts 42 through 45.  U.S. Const. art. I, § 9, cl. 3; § 10, cl. 1 (Ex Post Facto Laws).**

Counts 42 through 45 apparently are based upon the constitutional prohibition against ex post facto laws.  Plaintiff seems to believe that Utah Admin. R. R277-600-8 is an ex post facto law.  However, as Defendants point out, an ex post facto law must have a retroactive punitive effect.  See Smith v. Doe, 538 U.S. 84, 92 (2003).  Plaintiff has made no such allegation, nor could he.

**J.  Counts 46 and 47.  U.S. Const. art. I, § 10, cl. 1 (Contracts Clause)**

Plaintiff contends that Utah Admin. R. R277-600-8 "impairs the obligation of contracting with Plaintiff to provide his children with free school, including transportation."  (Compl. at 59.)  The Contracts Clause prohibits any state law from retroactively affecting contract rights.  See Tidal Oil Co. v. Flanagan, 263 U.S. 444 (1924).  Plaintiff has not alleged the existence of any contract or the right to enter into a contract with any of the defendants.

**K.  Counts 48 and 49.  U.S. Const. art. IV, § 2, cl. 1 (Privileges and Immunities Clause).**

This provision states:  "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  In this claim, Plaintiff asserts that his rights under the Privileges and Immunities Clause were violated by "a failure to provide the full range of U.S. Constitutionally guaranteed rights, including the right to be free from involuntary servitude and other herein stated rights of Plaintiff, that are provided by other States."  (Compl. at 60.)

However, as Defendants point out, the Privileges and Immunities Clause prohibits discrimination by a state against residents of another state.  See Hawaii Boating Ass'n v. Water Transp. Facilities Div., 651 F.2d 661, 666 (9th Cir. 1981).  Since Plaintiff alleges that he is a Utah resident ("Verification," Compl. at 74), the Privileges and Immunities Clause has no application to this case.  In his opposition memorandum, Plaintiff commendably acknowledges that he mistakenly alleged violations of his rights in Counts 48 and 49.  (Pl.'s Mem. at 19, ¶ 32.)

**L.  Counts 50 and 51.  U.S. Const. art. IV, § 4.  (Invasion Clause)**

Section 4 states:  "The United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion; and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic Violence."  Plaintiff alleges that the improper application of the Utah Administrative Rules constituted an invasion of his constitutional rights and violated Defendants' "obligation to protect every citizen against any attack upon themselves or their rights."  (Compl. at 61.)

The Invasion Clause affords "protection in situations wherein a state is exposed to armed hostility from another political entity."  California v. United States, 104 F.3d 1086, 1091 (9th Cir. 1997).  The facts provided by Plaintiff do not fit within the protection afforded by this constitutional provision.  Further, a "claim under the Invasion Clause presents a nonjusticiable political question."  Id. at 1090.  Thus, Plaintiff fails to state a claim in Counts 50 and 51.

**M.  Counts 52 and 53.  U.S. Const. art. VI, cl. 2 (Supremacy Clause).**

Plaintiff alleges that Defendants misapplied Utah Admin. R. R277-600-8 so as to place it above the United States Constitution.  The Supreme Court has held that the Supremacy Clause is not a source of federal rights.  Rather it secures federal rights, and gives them priority, when they come into conflict with state law.  Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 107 (1989); Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 613 (1979).  As Defendants point out, Plaintiff has not stated what federal law preempts the state rule or why, but simply states that Defendants have misapplied the administrative rule.  Thus, he has failed to state a claim under this provision.

**N.  Count 54.  U.S. Const. art. VI, cl. 3 (Oath of Office)**

The relevant portion of clause 3 states that "all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation to support this Constitution."  Plaintiff alleges that Defendants violated this provision by "perjury of oath in official capacity" and circumventing "clearly established U.S. Constitution provisions that guarantee Plaintiff's aforementioned rights in a flagrant and indifferent manner."  (Compl. at 64.) As previously discussed, Plaintiff has failed to state a claim for a violation of any constitutional right.  Thus, he cannot succeed on his claim that Defendants violated their oath to support the Constitution.

22

## V.  PLAINTIFF'S OTHER CLAIMS

**A.  Count 55.**

In Count 55, Plaintiff lists numerous provisions of the Utah Constitution and Utah Code, as well as state and federal caselaw, that he says he brought to the attention of the Defendants, but which they ignored.  As Defendants point out, Plaintiff's allegations are conclusory, and he has failed to provide any facts to clarify why he believes any of the provisions he cites were violated.  It is unclear whether Plaintiff is attempting to assert a claim under state law in Count 55.  However, since the court concludes that Plaintiff's complaint fails to state a claim for which relief can be granted on any of his federal claims, the court declines to exercise supplemental jurisdiction over any state law claim.  See 28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); Doe v. Bagan, 41 F.3d 571, 577 (10th Cir.1994).

**B.  Counts 56 and 57.**

In Count 56 and 57, Plaintiff alleges fraud, and that he suffered mental and emotional distress as a result.  This is a state law claim over which the court declines to exercise jurisdiction as discussed above.  United Mine Workers of Am., 383 U.S. at 726.

## VI.  QUALIFIED IMMUNITY

Defendants assert that in reimbursing Plaintiff at a rate of 32 cents a mile, they were providing fair compensation and acting within state guidelines.  They contend, therefore, that they did not violate any of Plaintiff's rights.  They argue, however, that even if Plaintiff could show that they misinterpreted the rule, they are entitled to qualified immunity.

23

Government officials are entitled to qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); accord Johnson v. Lindon City Corp., 405 F.3d 1065, 1068 (10th Cir. 2005). In analyzing a claim of qualified immunity, the court must first determine whether the plaintiff has alleged a violation of an actual constitutional or statutory right. If that question is answered affirmatively, the court must then determine whether the right was clearly established such that a reasonable official would have known that what he was doing violated that right. Johnson, 405 F.3d at 1068; Denver Justice and Peace Comm., Inc. v. City of Golden, 405 F.3d 923, 928 (10th Cir. 2005). If the plaintiff's allegations, taken as true, do not establish a constitutional or statutory violation, the court does not proceed to the second step, and the case is dismissed. Lawrence v. Reed, 406 F.3d 1224, 1230 (10th Cir. 2005).

In the instant case, the court concludes that taking Plaintiff's allegations as true, he has not alleged a violation of a statutory or constitutional right. Accordingly, the court need not proceed to the second step. See Petersen v. Farnsworth, 371 F.3d 1219, 1224 (10th Cir. 2004) (concluding that where no constitutional violation occurred, there was no need to consider whether defendants were entitled to qualified immunity).

## VII.  STATE DEFENDANTS

In addition to the Washington County defendants, Plaintiff named as defendants the Utah State Office of Education, Steven O. Laing, in his individual capacity, and as Utah State Office of Education, Executive Officer; Bill Huffman, in his individual capacity, and as Utah State Office of Education Transportation Supervisor; and Teresa L. Theuer,[12] in her individual capacity, and as a Utah State Office of Education Board Member (hereinafter "state defendants"). The state defendants have not been served.

As noted above, the court previously granted Plaintiff permission to proceed without prepayment of fees under 28 U.S.C. § 1915.  Section 1915(e) provides that "the court shall dismiss the case at any time if the court determines that . . . [the complaint] fails to state a claim on which relief may be granted . . . or seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); see Perkins v. Kansas Dep't of Corrections, 165 F.3d 803, 806 (10th Cir. 1999).

The Eleventh Amendment bars a suit for damages in federal court against a state or its agencies.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Sturdevant v. Paulsen, 218 F.3d 1160, 1164 (10th Cir. 2000); Johns v. Stewart, 57 F.3d 1544, 1552 (10th Cir. 1995).  Eleventh Amendment immunity also extends to state officials sued in their official capacities.  See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977);

---

[12]As noted above in footnote 2, Teresa L. Theuer is apparently a board member of the Washington County School District, not the State Office of Education.

Johns, 57 F.3d at 1553; Meade v. Grubbs, 841 F.2d 1512, 1525 (10th Cir. 1988).  This is so because a suit against an officer in his official capacity is the equivalent of suing the entity which he represents.  Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 165-66 (1985);  Brandon v. Holt, 469 U.S. 464, 471-72 (1985).  In other words, a suit against a state official in his official capacity is the same as suing the state.  Hafer, 502 U.S. at 25.  Accordingly, the individual state defendants sued in their official capacities, and the Utah State Office of Education, which is a state agency, are immune from a suit for damages under the Eleventh Amendment.  See Whitney v. New Mexico, 113 F.3d 1170, 1173 (10th Cir. 1997); Northington v. Jackson, 973 F.2d 1518, 1521 (10th Cir. 1992)(holding that a claim may be dismissed under section 1915 on the basis of Eleventh Amendment immunity).

Regarding the state defendants sued in their individual capacities, the complaint fails to state a claim against them for the same reasons, discussed above, that it fails to state a claim against the Washington County defendants.  Accordingly, the complaint against the state defendants should be dismissed under 28 U.S.C. § 1915(e)(2)(B).

## VIII.  RECOMMENDATION

The individual state defendants, sued in their official capacities, and the Utah State Office of Education, are entitled to Eleventh Amendment immunity.  Further, the complaint fails to state a claim upon which relief can be granted against any of the defendants.  Accordingly, the Washington County defendants' motion to dismiss  under Rule 12(b)(6) should be granted (Dkt. no. 18), and the complaint should be dismissed as to all defendants pursuant to 28 U.S.C.

§ 1915(e)(2)(B).

## IX.  MOTION TO AMEND COMPLAINT & TO STRIKE

A court may properly dismiss a complaint without allowing an opportunity to amend

where amendment would be futile.  See Curley v. Perry, 246 F.3d 1278, 1281-82 (10th Cir. 2001);

Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).  "A proposed amendment is futile if

the complaint, as amended, would be subject to dismissal for any reason."  Watson v. Beckel,

242 F.3d 1237, 1239-40 (10th Cir. 2001).

In his memorandum, Plaintiff seeks to amend his complaint to allege criminal violations

so as to come within the ambit of some of the criminal statutes upon which he relies.  (Pl.'s

Mem. at 5, 16.)  However, simply alleging criminal violations would not save these counts.  This

is a civil case, and the criminal statutes have no application.  It is clear that Plaintiff cannot

prevail on the facts alleged, and amendment would be futile.  Accordingly, the court denies the

motion to amend.

Plaintiff also asks the court to strike the Washington County defendants' motion to

dismiss.  (Pl.'s Mem. at 2.)  The basis for striking the motion appears to be that the parties'

names are printed in all capital letters in the caption of the motion to dismiss.  Plaintiff states that

because of this, the defendants are non-joined parties and the motion to dismiss is improper.

Plaintiff has previously been warned that such arguments are without merit.  (See Order, Dkt. no.

26.)

Plaintiff also asserts that the motion to dismiss is untimely, and that default judgment should be entered in his favor.  Plaintiff's assertion that the motion is untimely is incorrect.  The court granted the Washington County defendants an extension of time until September 17, 2004 to respond the complaint.  (Order, Dkt. no. 13.)  Defendants filed their motion on that date.  Accordingly, the motion to strike is denied.

## X. ORDER

IT IS HEREBY ORDERED that the motion to amend and motion to strike (Dkt. No. 22) are DENIED.

## XI. OBJECTIONS

Copies of this Report and Recommendation and Order are being mailed to the parties, who are hereby notified that they have the right to object to the Report and Recommendation and Order.  The parties are further notified that they must file any objections to the Report and Recommendation and Order with the clerk of the district court, pursuant to 28 U.S.C. § 636(b), within ten (10) days after receiving it.  Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

DATED this 26th day of August, 2005.

David Nuffer
United States Magistrate Judge